RECEIVED
ASHEVILLE, N.C.
APR 06 2018
Clerk, U.S. Dist. Court
W. Dist. of N.C.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | |
|---|---|
| TERI LYNN HINKLE<br>*Plaintiff.*<br><br>vs<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.; TRANS UNION LLC; EQUIFAX, INC.; EQUIFAX INFORMATION SERVICES, LLC<br>*Defendants* | Civil No: 1:18-CV-00007-MR-DLH<br><br>TRIAL BY JURY DEMANDED |

## FIRST AMENDED COMPLAINT FOR VIOLATIONS OF THE FCRA

### JURISDICTION

1. This court has jurisdiction under 15 U.S.C. § 1681p and 28 U.S.C § 1331.

2. All conditions precedent to the bringing of this action have been performed.

### PARTIES

3. The Plaintiff in this lawsuit is Teri Lynn Hinkle, a natural person, who resides in Cherokee County, North Carolina.

4. Defendant Experian Information Solutions, Inc. (Experian) along with its subsidiaries, affiliates and partners operates as a Consumer Reporting Agency regulated by the Fair Credit Reporting Act, (FCRA) 15 U.S.C. § 1681 *et seq.* and maintains corporate offices at 475 Anton Blvd., Costa Mesa, CA 92626.

5. Experian, its subsidiaries and partners sell consumer information and data derived from consumer information in its consumer file(s) in a number of products and services to customers such as the debt collection industry offering their "First to Their Wallet" service as just one example and generates hundreds of millions of dollars in revenue annually. Experian gathers massive amounts of consumer information on a daily basis as stated on its web page[1], "Experian's U.S. ConsumerView marketing database covers over 300 million individuals and 126 million households. With the freshest data compiled from hundreds of public and proprietary sources, Experian has thousands of powerful data points to help marketers reach their targeting goals, including demographics, purchasing habits, lifestyles, interests and attitudes." Experian markets a product for businesses to target people for financial products using its financial data solutions stating "Experian's Financial and Wealth Audiences suite of solutions can help you accurately target consumers for financial services offerings using wealth indicator audiences, developed through our exclusive partnership with First Manhattan Consulting Group (FMCG Direct)", on that same web page.

6. Defendant Equifax, Inc. (Equifax) along with its subsidiaries, *operates* as a Consumer Reporting Agency ("CRA") regulated by the Fair Credit Reporting Act, (FCRA) 15 U.S.C. § 1681 *et seq.* with Equifax Inc. corporate offices at 1550 Peachtree Street, Atlanta, GA 30309.

7. Equifax, Inc. is the parent of Equifax Information Services, LLC (EIS). In prior litigation it has taken the position it is not itself a "consumer reporting agency" governed by the FCRA. See 15 U.S.C. § 1681a(f) ("The term "consumer reporting agency" means any person, who for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and

---

[1] https://www.experian.com/marketing-services/targeting/data-driven-marketing.html (last viewed March 9, 2018)

which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.")

8. But of course, Equifax, Inc. *is* a consumer reporting agency. For purposes of the FCRA Equifax, Inc. has held itself out repeatedly to consumers, regulators and the public generally as the actual operating entity. The branding, labels and disclosures on the Defendants' consumer website is dominated by "Equifax, Inc." titling[2]. Defendants have held Equifax, Inc. out as the operating and responsible entity along with EIS which they readily acknowledge as being a consumer reporting agency.

9. Equifax, Inc. and its subsidiaries such as Equifax Information Services LLC (EIS) and Equifax Consumer Services, LLC (ECS) *operate* as alter egos of one another and freely transfer communications from consumers, as well as consumer information and data based on consumer information and communications, between the entities for commercial purposes without restriction and to treat them as separate entities would promote fraud and sanction injustice.

10. Equifax, Inc. and its subsidiaries including EIS *operate* using the same "Equifax" logo with no differentiation between entities when interacting with consumers via mail and otherwise. By virtue of different subsidiaries and divisions operating without any impediments of corporate structure using the same logo as Equifax Inc. an unsophisticated consumer would not know one Equifax entity from another.

11. Equifax, Inc. has used EIS and ECS and other subsidiaries as dependent and integrated divisions rather than separate legal entities. The business operations are fully coordinated and shared resources are cross-applied without full and complete profit and cost centers. Management decisions at EIS and ECS as well as other divisions are made by and through

---

[2] https://www.equifax.com/personal/ (last viewed March 9, 2018)

First Amended Complaint for Violations of the FCRA   Page 3 of 15
Case 1:18-cv-00007-MR-DLH   Document 37   Filed 04/06/18   Page 3 of 15

Equifax, Inc. And the entities largely hold themselves out as a single uniform business entity exchanging and selling consumer information as well as data derived from consumer information and communications it holds in its consumer files. Its customer base is vast including state and federal governments generating hundreds of millions if not billions of dollars in revenue annually.

12. The FCRA, through a rule mandated at § 1681x expressly prohibits "a consumer reporting agency from circumventing or evading treatment as a consumer reporting agency" by means of corporate organization or restructuring.

13. Equifax, Inc. and its subsidiaries – whether or not they observe state law corporate formalities – have eliminated nearly all lines between their different business entities in the collection, maintenance, sharing and furnishing of consumer reporting information. Equifax, Inc. entities such as EIS regularly share FCRA restricted information with sibling ECS to market and profit from the sale of identity theft products including the blurring of legal lines between providing file information under the FCRA versus private sale to the consumer. It does so with a number of Equifax related entities such as TALX Corporation, eThority, Anakam, Inc. not to mention Equifax Mortgage Services.

14. To remain separate and distinct for purposes of liability in this action, Defendants Equifax, Inc. and Equifax Information Services, LLC *must operate* as separate and legally as well as operationally distinct entities. Here for matters alleged and relevant herein, EIS is merely an alter ego of Equifax, Inc. For purposes of how consumer data was handled, warehoused, used and sold the corporate lines were disregarded in practice. EIS, ECS and other subsidiaries of Equifax, Inc. are mere instrumentalities for the transaction of the corporate consumer credit business. Equifax, Inc., EIS, ECS and other subsidiaries share full unity of

interest such that the separate personalities of the corporation and subsidiaries no longer exist as they operate as one consumer reporting agency under the FCRA.

15. Defendant Trans Union, LLC (Trans Union) along with its subsidiaries and affiliates operates as a Consumer Reporting Agency regulated by the Fair Credit Reporting Act, (FCRA) 15 U.S.C. § 1681 *et seq.* with corporate offices at 555 W. Adams Street Chicago, IL 60661. Trans Union operates as a single FCRA governed consumer reporting agency. Trans Union, LLC has structured itself in order to warehouse its sale of credit reporting consumer reports in one entity and its sale of criminal history, employment, landlord-tenant purposed, etc. consumer reports in other entities. However, it freely transfers data between units and operates without any impediments of corporate structure. In almost every material regard, the Trans Union units *operate* as if they are one and the same, a single consumer reporting agency.

## VENUE

16. The occurrences which give rise to this action occurred in Cherokee County, North Carolina and Plaintiff resides in Cherokee County, North Carolina.

17. Venue is proper in the Western District of North Carolina.

## GENERAL ALLEGATIONS

18. Plaintiff wanted to obtain her **full consumer file disclosure** to obtain all information recorded and maintained in Defendant's files and/or databases about her as 15 U.S.C. § 1681g(a)(1) states she is entitled to. Plaintiff looked at the annualcreditreport.com website which was set up by and is operated by the Defendants but could find no place on that website where she could request her **full consumer file disclosure**, but instead only where

she could request a "credit report" which is NOT what she wanted. Plaintiff then decided to write to each of the Defendants directly to obtain her **full consumer file disclosure**.

19. Plaintiff made a written request sent by certified mail for a copy of her **full consumer file disclosure** which was received by Experian on September 28, 2017. See Exhibit 1 attached.

20. In response to her very specific request for her **full consumer file disclosure** Plaintiff received a letter which was not responsive to her request. The letter requested further proof of identity and address in the form of a driver's license and a current utility bill. This was the only communication Plaintiff received from Experian. See Exhibit 3 attached.

21. Plaintiff made a written request sent by certified mail for a copy of her **full consumer file disclosure** which was received by Equifax on September 14, 2017 See Exhibit 1 attached.

22. In response to her very specific request for her **full consumer file disclosure** Plaintiff received a letter dated September 21, 2017, requesting payment and further documentation to establish identity and address in order to receiver her "Equifax credit file". See Exhibit 4 attached. Several days later Plaintiff received a document titled "EQUIFAX-CREDIT FILE" from Equifax. The document stated Plaintiff's letter requesting her **full consumer file disclosure** was being treated as a "dispute" and that the contents of the credit file were the result of the "recent dispute". The document repeatedly referred to its contents as a "credit report". There was no information regarding Plaintiff contained in the document other than Plaintiff's current address under a sub-heading of "THE RESULTS OF OUR INVESTIGATION". Plaintiff had made no dispute of any information in any report or document with Equifax in at least the past four years.

First Amended Complaint for Violations of the FCRA Page 6 of 15
Case 1:18-cv-00007-MR-DLH Document 37 Filed 04/06/18 Page 6 of 15

23. Plaintiff made a written request sent by certified mail for a copy of her **full consumer file disclosure** which was received by Trans Union on September 28, 2017 See Exhibit 1 attached.

24. In response to her very specific request for her **full consumer file disclosure** Plaintiff received a letter which was not responsive to her request. See Exhibit 5 attached.

25. Plaintiff, in making the exact same request of each of the Defendants, specified in great detail exactly what specific sections of the Fair Credit Reporting Act (FCRA) requires each Defendant to provide a **full consumer file disclosure** once every 12 months at no charge when a request is made by a consumer. See Exhibit 1 attached.

26. Plaintiff's request for a **full consumer file disclosure** from each Defendant was her first request for a **full consumer file disclosure** within 12 months and identification in the form of legible copies of her social security card and current North Carolina driver's license were attached to the requests for identification and location purposes.

27. After receiving a response from each Defendant that did not comply with the request made, Plaintiff made a second and final request for a **full consumer file disclosure** pursuant to the FCRA of each Defendant. See Exhibit 2 attached. A copy of the initial letter was sent with the second request for clarification along with identification in the form of legible copies of Plaintiff's social security card and current North Carolina driver's license as well as other documents as requested for identification by Experian and Trans Union.

28. In addition to the driver's license and social security card copies sent to Experian, Plaintiff attached a legible current copy of Plaintiff's AT&T bill as requested. See Exhibit 6 attached.

29. In addition to the driver's license and social security card copies sent to Trans Union, Plaintiff attached a legible current copy of Plaintiff's Dish Network bill as requested. See Exhibit 7 attached.

30. Both utility bills indicated the same address as the one shown on Plaintiff's current North Carolina driver's license. All copies of documents sent to Experian and Trans Union were clearly legible.

31. **At no time did Plaintiff make any request for a credit report/disclosure or credit file** from the Defendants but instead was very specific in requesting a **full consumer file disclosure** pursuant to 15 U.S.C. § 1681g(a)(1) as outlined in the initial request. [Exhibit 1]

32. In response to Plaintiff's second request for a **full consumer file disclosure** to Experian she received nothing, which was not responsive to her request as required by 15 U.S.C. § 1681g(a)(1). Experian simply chose not to respond to the second request which had ample, legible proofs of identity and address attached including Plaintiff's current AT&T bill. Instead Plaintiff received no further communication from Experian.

33. In response to Plaintiff's second request for a **full consumer file disclosure** to Equifax she received another document titled "EQUIFAX-CREDIT FILE", dated October 26, 2017. The document contained nothing but her current and previous addresses which was not responsive to her request for a **full consumer file disclosure** as required by 15 U.S.C. § 1681g(a)(1). The cover sheet of the report was titled "EQUIFAX-CREDIT FILE" which stated, "Thank you for requesting your credit file, commonly called a Consumer Credit File". Plaintiff at no time requested any "credit report" or "credit file". The letter also contained a "Research Request Form" for the purpose of filing any dispute and instructed that it be mailed to Equifax Information Services LLC. Plaintiff requested a **full consumer file**

**disclosure** to include ALL information in her file at Equifax as of the date the letter was received to include any archived or obsolete information as permitted by the FCRA. This would include ANY information in Defendant's possession which would pertain not only to Plaintiff's credit worthiness, credit standing and credit capacity but also general reputation, personal characteristics, or mode of living. [15 U.S.C. § 1681a].

34. None of the Defendants in this case ever responded to Plaintiff's letters by stating that ANY of the proofs of identity and address mailed to them were illegible or otherwise unreadable.

35. In response to Plaintiff's second request for a **full consumer file disclosure** to Trans Union she received a duplicate of the letter and form sent in response to her first request which was not responsive to her request as required by 15 U.S.C. § 1681g(a)(1). [Exhibit 8] Plaintiff had complied with Trans Union's request for further proofs of identity and/or address by including a copy of her current Dish Network bill with copies of her current North Carolina driver's license and social security card all of which were clearly legible with her second letter of request for her **full consumer file disclosure**.

36. All documents provided to Defendants in relation to identity and location information were in clearly legible form and in compliance with 15 U.S.C. § 1681h.

37. In each case with each Defendant there was only communication in the form of letters requesting Plaintiff's **full consumer file disclosure** and response(s) by each Defendant with no other party involved in the communications between the parties other than the United States Postal Service (USPS) which transported documents between them.

38. Plaintiff was well aware of the hack of the Equifax database and had reason to believe that more information than she had ever received in a conventional credit report in the past had been stolen just from the widespread publicity surrounding the hack and her study of the

First Amended Complaint for Violations of the FCRA Page 9 of 15
Case 1:18-cv-00007-MR-DLH   Document 37   Filed 04/06/18   Page 9 of 15

consumer protection statutes including the FCRA. She had been studying the FCRA prior to the hack and already realized there was substantial information that companies like Equifax, Experian and Trans Union had in their file(s) about consumers than had been included in any conventional credit report she had received previously. Plaintiff had no direct knowledge of specific information regarding herself that might be in Defendants' file(s). That information, if it existed, could only be obtained through requesting a **full consumer file disclosure** pursuant to 15 U.S.C. § 1681g(a)(1) rather than asking for a conventional credit report as she had in the past either through annualcreditreport.com or directly from the Defendants.

39. Plaintiff requested and received a full consumer file disclosure from LexisNexis comprised of 123 pages comprising 10 separate consumer reports of information including information apparently sourced from Experian and Equifax with substantial information sourced from Equifax being blatantly erroneous. This gives Plaintiff reason to believe there is additional consumer information related to Plaintiff that Equifax is disseminating that is wholly false and misleading.

40. Plaintiff did NOT request a credit report, credit disclosure, or anything else using the words "credit" or "report" in any manner from any Defendant at any time related to this lawsuit but instead made a request for her **full consumer file disclosure** and nothing else.

41. Upon information and belief there is substantial information relating to the Plaintiff that is contained in all Defendants' files that has not been disclosed to her including, but not limited to, information that was previously shown in her credit reports that is now archived and additional information that is provided to prospective creditors, insurers or employers who request information on Plaintiff that she has never seen or has been made aware of.

42. Upon information and belief the information that is not disclosed to Plaintiff may contain negative codes or erroneous account information, among other things that is provided to prospective creditors, insurers or employers which directly affect how that prospective creditor, insurer or employer would view the Plaintiff in terms of granting credit, rating insurance policies, providing employment or even providing housing.

43. This undisclosed information has never been provided to Plaintiff even when it was requested so she could examine it for accuracy and dispute it if necessary. It could be blatantly false or at the least misleading and without disclosure by the Defendants Plaintiff would not have the opportunity to dispute the accuracy or veracity of the information in Defendant's files which she is legally entitled to do under the FCRA. Disclosure of false or misleading information to prospective creditors, insurers or employers that Plaintiff knows nothing about could paint her in a false light where she could be denied credit, housing, employment or pay higher interest rates on credit if it was granted and higher premiums for insurance harming her substantially.

44. Upon information and belief Defendants have far more information relating to Plaintiff in their file(s) and database(s) including archived information that Plaintiff has never had access to or had the opportunity to review for accuracy that is provided to others when they make a request for consumer information related to her. This information has been properly requested by Plaintiff multiple times and is required to be disclosed under 15 U.S.C. § 1681g(a)(1) when a proper request is made by a consumer. The Defendants have **repeatedly refused** to provide Plaintiff with her **full consumer file disclosure** after multiple requests. Plaintiff's requests were very specific in nature so as not to be misconstrued as a request for her credit report by Defendants.

45. Plaintiff never made any request of Defendants that used the words "credit" or "report" in any manner or context but made a straightforward and very clear request ONLY for a **full consumer file disclosure** [Exhibits 1,2] to which she is entitled under 15 U.S.C. § 1681g(a)(1) and all Defendants failed to provide her **full consumer file disclosure** as required by the FCRA.

46. Plaintiff clearly is not making any claim regarding information that HAS been provided to a third party that she is aware of. The sole issue in this lawsuit revolves around the fact that she has not had access to ALL information in her **full consumer file** that may have been at some time in the past provided to an unknown third party or **MIGHT** be provided at some time in the future to a third party and she is entitled to have access to by law to review for accuracy.

47. Plaintiff made no requests for information such as credit scores, default dates, predictors or other ancillary information related to how the Defendants hold and/or manage the consumer information they have in their file(s) on individual consumers. The ONLY information requested by Plaintiff was a **full consumer file disclosure** of information *directly* related to her as a consumer that affects her credit worthiness, credit standing and credit capacity but also general reputation, personal characteristics, or mode of living among other things.

48. Because Plaintiff has not had access to that undisclosed information she has therefore had no opportunity to review it and dispute the accuracy of it if it is found to be false yet it is provided to potential creditors, housing providers, insurers and employers without her knowledge and purposely and illegally concealed from her.

49. Upon information and belief when a report is provided by the Defendants to a potential creditor, insurer or employer that information is provided in an encrypted format with instructions to the user that the consumer is NOT to be shown that information. There is no

prohibition in the law that information obtained by a user can be provided to the consumer if a request for it is made by the consumer yet instructions from the Defendants are to the contrary. Why?

50. One can only surmise that there must be some nefarious reason why information should not be provided to the consumer that is sent to the user in an encrypted format with instructions to the user to conceal it from the consumer. A reasonable assumption would be that it contains information that the consumer has never seen and the consumer reporting agencies don't want the consumer to see for some unknown reason. This is obviously not in concert with the mandate of full disclosure clearly articulated in the FCRA in unambiguous plain language.

51. Plaintiff made multiple specific written requests of each of the Defendants for a **full consumer file disclosure** to which she is entitled as clearly stated in 15 U.S.C. § 1681g(a)(1) and all Defendants have failed to provide her **full consumer file disclosure** to Plaintiff and are therefore in violation of the FCRA.

52. The claims made in this lawsuit are in NO manner related to the data breach that occurred with Equifax. The claims herein are entirely focused on the very simple premise that all Defendants failed to provide a **full consumer file disclosure** of all information in their files to Plaintiff upon her multiple requests as required by 15 U.S.C. § 1681g(a)(1). There is no relation of any claims made herein to any issues with the Equifax data breach.

53. The actions of all Defendants occurred within the past 2 years and are within the Statute of Limitations under the FCRA.

## COUNT I

First Amended Complaint for Violations of the FCRA Page 13 of 15
Case 1:18-cv-00007-MR-DLH   Document 37   Filed 04/06/18   Page 13 of 15

## VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §1681, WILLFUL NON-COMPLIANCE BY DEFENDANT EXPERIAN INFORMATION SOLUTIONS INC.

54. Paragraphs 1 through 53 are re-alleged as though fully set forth herein.

55. Plaintiff is a consumer within the meaning of the FCRA, 15 U.S.C. § 1681a(c).

56. Experian operates as a consumer reporting agency within the meaning of the FCRA, 15 U.S.C. § 1681a(f).

57. Experian repeatedly failed to comply with Plaintiff's multiple requests for a **full consumer file disclosure** pursuant to 15 U.S.C. § 1681g(a)(1).

WHEREFORE, Plaintiff demands judgment for damages against Experian for statutory damages of $1000.00, any attorney's fees, and all costs pursuant to 15 U.S.C. § 1681n.

## COUNT II

## VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §1681, WILLFUL NON-COMPLIANCE BY DEFENDANT TRANS UNION LLC

58. Paragraphs 1 through 53 are re-alleged as though fully set forth herein.

59. Plaintiff is a consumer within the meaning of the FCRA, 15 U.S.C. § 1681a(c).

60. Trans Union operates as a consumer reporting agency within the meaning of the FCRA, 15 U.S.C. § 1681a(f).

61. Trans Union repeatedly failed to comply with Plaintiff's multiple requests for a **full consumer file disclosure** pursuant to 15 U.S.C. § 1681g(a)(1).

WHEREFORE, Plaintiff demands judgment for damages against Trans Union for statutory damages of $1000.00, any attorney's fees, and all costs pursuant to 15 U.S.C. § 1681n.

# COUNT III

## VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §1681, WILLFUL NON-COMPLIANCE BY DEFENDANTS EQUIFAX, INC. AND EQUIFAX INFORMATION SERVICES, LLC

62. Paragraphs 1 through 53 are re-alleged as though fully set forth herein.

63. Plaintiff is a consumer within the meaning of the FCRA, 15 U.S.C. § 1681a(c).

64. Equifax and its alter ego Equifax Information Services, LLC operate as a consumer reporting agency within the meaning of the FCRA, 15 U.S.C. § 1681a(f).

65. Equifax and Equifax Information Services, LLC repeatedly failed to comply with Plaintiff's multiple requests for a **full consumer file disclosure** pursuant to 15 U.S.C. § 1681g(a)(1).

WHEREFORE, Plaintiff demands judgment for damages against Equifax, Inc. and Equifax Information Services, LLC for statutory damages of $1000.00, any attorney's fees, and all costs pursuant to 15 U.S.C. § 1681n.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury of all issues so triable as a matter of law.

Dated: April 4, 2018

Respectfully Submitted,

*[signature]*
Teri Lynn Hinkle
19 Mossy Creek Trail
Murphy, North Carolina 28906
828-494-2007