RECEIVED
ASHEVILLE, N.C.

MAY 02 2018

Clerk, U.S. Dist. Court
W. Dist. of N.C.

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION

| | |
|---|---|
| **TERI LYNN HINKLE** | ) |
| *Plaintiff.* | ) |
| | ) |
| **vs** | ) |
| | ) |
| **EXPERIAN INFORMATION** | ) |
| **SOLUTIONS, INC.; TRANS UNION** | ) |
| **LLC; EQUIFAX, INC.; EQUIFAX** | ) |
| **INFORMATION SERVICES, LLC** | ) |
| *Defendants* | ) |

**Civil No: 1:18-CV-00007-MR-DLH**

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS EQUIFAX, INC. AND EQUIFAX INFORMATION SERVICES LLC'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6)

NOW COMES the Plaintiff, Teri Lynn Hinkle, and herein asks this Court to deny

Defendant's Motion to Dismiss for Failure to State a Claim Pursuant to Federal Rule of Civil

Procedure 12(b)(6) and states as follows:

### INTRODUCTION

Plaintiff filed her Original Complaint alleging violations of the Fair Credit Reporting Act

(FCRA) 15 U.S.C. § 1681g(a)(1) against Experian Information Solutions, Inc. (Experian), Trans

Union LLC (Trans Union) and Equifax, Inc. (Equifax). Experian and Trans Union answered the

Original Complaint while Equifax failed to respond. Plaintiff then filed a Motion for Leave to

file her First Amended Complaint alleging violations of the same statute against the same

Defendants and added Equifax Information Services LLC (EIS) as an additional Defendant.

That motion was granted and the First Amended Complaint (FAC) was docketed on April 6,

2018 [Doc. 37]. Equifax and EIS (Efx. Defendants) filed a joint Motion to Dismiss Plaintiff's

First Amended Complaint. [Doc. 43] and Brief in Support. [Doc. 44]

The claims made in this case are under § 1681g(a)(1) and Plaintiff alleges Equifax is in violation of § 1681x by virtue of how it *operates*[1] making it a consumer reporting agency and liable to Plaintiff for damages. The Efx. Defendants argue Plaintiff has offered mere speculative and conclusory allegations that she received a "credit report" when she requested a **"full consumer file disclosure."** Plaintiff's claims are factually correct, detailed, and fully articulated with exhibits to support her claims in her *notice pleading*. The Efx. Defendants received fair notice of the claims being made. After specifically requesting a **"full consumer file disclosure"** to which she is entitled BY LAW Plaintiff received a "dispute response" and a "credit report" (Exhibit 1).[2] Both are a type of report which is "based" on a consumer's file, not a "full file disclosure". The LexisNexis file provided to Plaintiff revealed that there was substantial information related to her in Equifax's files that had not been provided by Equifax. [Doc. 37- ¶ 39] Equifax chose to ignore its required MANDATE under 15 U.S.C. § 1681g(a)(1) to provide a **FULL** file disclosure to a consumer after Plaintiff's request letter citing the exact language of the statute which specifies that MANDATE. [Doc. 37-1, Ex.1-2] Contrary to Defendant's argument F.R.C.P. 8(a)(2) does not require Plaintiff to prove her case at the notice pleading stage but that each claim include a "short and plain statement....showing that the pleader is entitled to relief." The claims must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff's FAC should not be dismissed because it states a plausible cause of action under *Twombly* and Rule 8(a)(2).

---

[1] The fact that Equifax conveniently interchanges the names of its various entities using just the name "Equifax" when it suits its needs in its communications with consumers indicates a deceptive nature in an attempt to conceal the fact that Equifax, Inc. and its subsidiaries operate as one consumer reporting agency rather than *operating* as separate and distinct entities which they hold themselves out to be to the public, shareholders and regulators in violation of 15 U.S.C. § 1681x

[2] Both documents self-identify as a "credit report" and a "consumer credit report" not as a "full consumer file disclosure".

## STANDARD OF REVIEW

When considering Defendant's motion, the court must construe the factual allegations in the complaint in the light most favorable to the Plaintiff. *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996); *Jones v. General Elec. Co.*, 87 F.3d 209, 211 (7th Cir. 1996). Only if no possible construction of the alleged facts will entitle Plaintiff to relief should the court grant Defendant's motion. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232 (1984). The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). "The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." *Beanal v. Freeport McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir.1999). The court "should view the complaint in the light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993). If the factual allegations in Plaintiff's complaint support any legal theory that entitles Plaintiff to some relief, the court should overrule Defendant's motion.

## ARGUMENT AND AUTHORITIES

### I.    Equifax Inc. Is Not a Consumer Reporting Agency.

The standard here is that Plaintiffs' detailed factual allegations must be accepted as true and, as shown below, demonstrate that Plaintiff has stated a claim under the FCRA for the relief she has requested. The disputes raised by Defendants are not legal, but factual. Plaintiff is not required to provide in full detail all facts that might be submitted on summary judgment or at trial. A complaint is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" F.R.C. P. 8(a)(2). Plaintiff has alleged sufficient detail by which the Defendants can answer and the Court can determine the plausibility of her claims.

The FCRA at § 1681x and in 12 CFR 1022.140 clearly articulates that a consumer reporting agency (CRA) may not structure itself in a particular manner so as to avoid liability as a CRA. Equifax, Inc. **operates** its business hyping itself as "one of the big three" CRAs along with Experian and Trans Union. Legislators obviously recognize Equifax, Inc. is a CRA as evidenced by the letter from Congress to it, dated Feb. 20, 2018. (See Exhibit 2) Evidently its own representing Law Firm is in agreement as evidenced by a letter from King & Spalding on behalf of **Equifax, Inc.,** to the State Attorneys General of all states regarding the data breach in 2017. The letter refers to **Equifax, Inc.'s not Equifax Information Services LLC's** breach of its database. (See Exhibit 3). There is no mention another company's database was hacked or that a company other than Equifax, Inc. owns, and maintains it. It is not a question of company organization but how data under **Equifax, Inc.'s control** is used by various entities.

Equifax, Inc. does not identify on its webpages to consumers, regulators and the public at large that EIS is the CRA but that is where consumers are sent to obtain credit reports. Each webpage uses only the name "Equifax" with the Equifax logo at the top of the page while at the bottom of each page in the copyright notice it clearly states "Copyright Equifax, Inc. 2018."[3] Equifax's web pages refer to "your Equifax credit report" rather than your Equifax Information Services LLC credit report. There is no reference to EIS being the provider of an "Equifax credit report." Equifax, Inc. is very consistent in its use of only the word "Equifax" in all of its communications both on the web and in correspondence with consumers. This gives rise to the belief that Equifax, Inc. is in fact the company providing the information that **any** customer or consumer would seek or receive through various consumer reports, not necessarily just credit reports. Which companies under the "Equifax" umbrella are using what information, how is it

---

[3] https://www.equifax.com/personal/ and https://www.equifax.com/business/credit-information/ (last visited April 23, 2018)

being used and accessed, is the relevant question here in order to determine whether Equifax, Inc. is in fact a CRA as alleged by Plaintiff. How they actually *operate* is what Plaintiff seeks to bring to light to show that Equifax, Inc. does in fact *operate* as a CRA in a factual sense because of its concerted efforts to structure itself through various divisions and/or subsidiaries such as EIS and to allow those subsidiaries to access the same information to avoid liability which is strictly prohibited under 15 U.S.C. § 1681x and 12 CFR 1022.140.

Equifax provides case law in support of its motion to dismiss that Equifax, Inc. is not a CRA such as *Greear v. Equifax Inc., Channing v. Equifax, Inc. and Slice v. Choicedata Consumer Servs., Inc., Persson[4] v. Equifax, Inc. and Weiler v. Equifax, Inc.* Dismissal was granted at summary judgment in those cases. Judge Lauck stated, "However, every decision cited by Equifax, Inc. was rendered at the summary judgment stage… Further, in each of the cases cited above, the plaintiff proceeded *pro se* or failed to oppose the motion. Such rulings cannot provide persuasive support for the Defendants' position at the Motion to Dismiss stage." in the court's Memorandum Opinion denying Equifax, Inc.'s motion to dismiss. *Jones v. Equifax, Inc.* U. S. District Court for the Eastern District of Virginia 3:14-cv-00678 (Aug. 27, 2015) Doc. 54 fn11. This case should proceed allowing the facts to be discovered and presented rather than hidden which is the rather obvious desire of the Efx. Defendants in this case.

By reason of an unidentified reference to fraud in regard to F.R.C.P . Rule 9(b) Equifax, Inc. asserts Plaintiff's arguments reach the level of veil piercing which is baseless. Plaintiff states in her complaint only that Equifax, Inc. is a **parent** company to EIS and others which *operate* in an *alter ego* capacity. The fact that Equifax, Inc. is a CRA is established by determining how the

---

[4] Efx. Defendants attach three Exhibits to their filing [Doc. 44] to support their position however all three are problematic; in *Frihat v. Citimortgage, Inc.*(Ex.1) the plaintiff failed to prosecute or counter Defendant's arguments; in *Persson v. Equifax Inc.*(Ex.2) the plaintiff failed to counter Defendants arguments or to amend the complaint; in *Weiler v. Equifax Inc.*(Ex.3) the Plaintiff failed to dispute Defendant's evidence at all.

data in Equifax Inc.'s databases regarding Plaintiff is used, accessed, and by whom. The FCRA is very clear on those points. Piercing the corporate veil is a meritless argument.

Plaintiff's FAC plausibly alleges that Equifax, Inc. and its subsidiary EIS *operate* as a single unified consumer reporting agency. [Doc. 37 ¶¶ 6-11, 13,14] The Efx. Defendants operate as a single FCRA governed "consumer reporting agency." Equifax, Inc. has structured itself in order to warehouse its sale of credit-reporting consumer reports in one entity and its sale of employment, payroll, and income-records in a second entity. Defendants together maintain a collective set of databases that – for Defendants' day-to-day use are treated as an integrated pool of information on consumers. Each Defendant is a CRA. Equifax freely transfers data between units and operates without any impediments of corporate structure. In almost every material regard, the Equifax units operate as if they are one and the same, a single "consumer reporting agency." Equifax is a 'consumer reporting agency' as defined in 15 U.S.C. §1681(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681(d), to third parties. Each of the Equifax entities is integrated as a single national credit reporting agency, with all databases marketed and made available to each of Equifax's customers regardless of structure or category of content. Defendants operate jointly as a national "CRA" as defined in 15 U.S.C. § 1681a(f). Equifax, Inc. which operates as "Talx Corporation" and "The WorkNumber", even states on its website, "Under FCRA, we are a Consumer Reporting Agency and subject to its requirements."[5]

Mrs. Hinkle sent her requests for a **full consumer file disclosure** specifically to Equifax not EIS. [Doc. 37-1, Ex. 1,2] Her letters were not returned nor did she receive any communication that she had made her request of the wrong party and should contact EIS instead

---

[5] http://www.theworknumber.com/Employees/FCRA/index.asp (last visited April 23, 2018)

as Equifax was not a CRA. Plaintiff received after her first request a "a dispute response"

referencing "THE RESULTS OF OUR INVESTIGATION".[Doc. 37 ¶22]. The response to the

fictitious dispute was not the same as the "EQUIFAX-CREDIT FILE" Plaintiff received in

response to her second request.[Doc.37 ¶33] (See Exhibit 1 attached) Both responses were

identified by Equifax as a **"credit report"** and identified the sender and the provider of that

information only as Equifax. The only reference to EIS was in regard to the Request Form for a

**credit report** if Plaintiff chose to use it.

Equifax itself states in its 2016 10K filing "Equifax Inc. is organized and reports its

business results in four operating segments.[6] An "operating segment" is by definition a

component and part of a single corporate entity:

> **Identification of operating segments**
> IFRS 8 defines an operating segment as a component of an entity:
> • that engages in revenue earning business activities
> • whose operating results are regularly reviewed by the chief operating
> decision maker. The term 'chief operating decision maker' is not as such
> defined in IFRS8 as it refers to a function rather than a title. In some
> entities the function could be fulfilled by a group of directors rather than
> an individual and
> • for which discrete financial information is available.

http://www.accaglobal.com/gb/en/member/discover/cpd-articles/corporate-reporting/ifrs8-

operating.html , (last visited April 12, 2018).[7]  S.E.C. financial statement standards are similar:

> Under the new accounting standard, an operating segment is a component of a business, for which separate
> financial information is available, that management regularly evaluates in deciding how to allocate resources
> and assess performance. Specifically, SFAS No. 131 states that an operating segment is a component of a
> business:
> * that engages in activities from which it may earn revenues and incur expenses (including revenues and
> expenses relating to transactions with other components of the same business);
> * whose operating results are regularly reviewed by the enterprise's "chief operating decision maker" to make
> decisions about resources to be allocated to the segment and assess its performance; and
> * for which discrete financial information is available.

---

[6] https://www.sec.gov/Archives/edgar/data/33185/000003318517000008/efx10k20161231.htm  (last visited April 23, 2018)
[7] ACCA (the Association of Chartered Certified Accountants) is the global body for professional accountants.

S.E.C. Segment Reporting Final Rules, https://www.sec.gov/rules/final/33-7620.txt (last visited April 12, 2018). It is not common ownership that matters, but common use of a FCRA-governed database that determines whether Equifax, Inc. and EIS *operate* as a consumer reporting agency. There is a question of fact to be determined through fact evidence rather than being a matter of law as Equifax, Inc. argues.

The factual allegations already support a plausible claim that the Defendants are a single operating CRA. How Defendants then segment their data for marketing and operations purposes is immaterial. An alleged "EIS" credit report may contain data that Equifax categorizes as "credit reporting" data as well as information it categorizes as "WorkNumber" data", and vice versa. How it brands its reports and what business segment it uses to deliver or sell them is immaterial. Plaintiffs' Complaint plausibly alleges that Defendants operate as a single CRA.

A veil-piercing mindset such as corporation A is not responsible for the debts of corporation B is not relevant for the question of whether the Defendants **operate** together as a CRA. This case is brought under a federal statute – the FCRA, 15 U.S.C. §1681, et seq. Determination as to whether to ignore the corporate veil in determining substantive liability of a party under a federal statute is governed by federal, rather than state law as the "doctrine of piercing the corporate veil is not a mere procedural rule or mere judgment enforcement mechanism, but substantively determines who is liable" under the federal statute. *Thomas v. Peacock*, 39 F.3d 493, 500-502 (4th Cir. 1994) (Applying this principal to an ERISA action). The standard adopted by the Fourth Circuit in *Thomas* was what it described as the "liberal veil-piercing standard" enunciated by the First Circuit,[8] *Thomas*, 39 F.3d 503-304 citing *Alman v.*

---

[8] The general rule adopted in the federal cases is that "a corporate entity may be disregarded in the interests of public convenience, fairness and equity," [citing *Capital Telephone Co. v. FCC*, 498 F.2d 734, 738 (D.C.Cir.1974) ]. In applying this rule, federal courts will look closely at the purpose of the federal statute to determine whether the statute places importance on the corporate form [citations omitted], an inquiry

*Danin*, 801 F.2d 1, 3-4 (1st Cir.1986) and *Town of Brookline v. Gorsuch*, 667 F.2d 215, 221 (1st

Cir. 1981). Thus, for example, while the state common law threshold could arguably require

more, the federal threshold for finding one entity an *alter ego* of another includes circumstances

in which "adherence to the corporate fiction [would …] lead to an evasion of legal obligations."

*Thomas*, 39 F.3d 504 (citations omitted).

      Plaintiff's First Amended Complaint in fact provides greater detail and specificity than

has been held necessary under *Twombly/Iqbal* in pleading alter ego/veil piercing.  For example,

In *The Flexible Benefits Council v. Feltman*, 1:08cv371, 2008 WL 2465457, *7 (E.D. Va. 2008),

Judge Cacheris rejected a corporate veil Rule 12(b)(6) argument against a Complaint that

principally alleged, "Upon information and belief, all of the above actions were performed in

concert with Defendants Feltman and ECFC, Ltd., as well as with other associates currently

unknown to plaintiff." *Feltman* Complaint, ¶50. Similar conclusions were reached in cases with

varying degrees of pleading detail. *See e.g. Osgood v. Midwest Parking Solutions*, 2009 WL

4825192 (E.D. Mo. Dec. 11, 2009) (finding plaintiffs' allegations of the individual's control and

dominance of the corporate entity sufficient to survive a motion to dismiss); *Maganallez v.*

*Hilltop Lending Corp.*, 505 F. Supp.2d 594 (N.D. Cal. 2007) (denying motion to dismiss alter

ego claim against individual who controlled corporate defendant). Indeed, in *Maganallez,* the

court noted that an allegation "that one of the major shareholders has 'essentially full operational

control' over [the defendant] during a specific period was sufficient to justify allowing plaintiffs

---

that usually gives less respect to the corporate form than does the strict common law alter ego doctrine....
(Emphasis added).

to proceed on an alter ego theory." *Id.* at 608 (citing *In re Napster, Inc Copyright Litig.*, 354 F. Supp.2d 1113, 1122 (N.D. Cal. 2005).[9]

Presently, the core dispute is whether BOTH Defendants operate as a "CRA" and are therefore subject to the FCRA. The FAC alleges that they do. Defendants' response is that the Complaint should be dismissed because they claim to have manufactured a corporate structure that separates Equifax's data between multiple controlled entities. This is an "evasion of legal obligations" imposed by the FCRA through "creative" corporate structuring and is prohibited by FCRA regulations. The Federal Trade Commission, at the time responsible for enforcement of the FCRA, promulgated regulations almost exactly on point to the Efx. Defendants. *See* 16 C.F.R. Part 611. Part 611 titled "Prohibition Against Circumventing Treatment as a Nationwide Consumer Reporting Agency" and in relevant part states:

> (a) A consumer reporting agency shall not circumvent or evade treatment as a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis' as defined under section 603(p) of the Fair Credit Reporting Act, 15 U.S.C. 1681a(p), by any means, including, but not limited to:
> (1) Corporate organization, reorganization, structure, or restructuring, including merger, acquisition, dissolution, divestiture, or asset sale of a consumer reporting agency[.]

16 C.F.R. Part 611.2.[10] The FTC examples of prohibited activity precisely fit Equifax. These include "(1) *Circumvention through reorganization by data type.*" In this illustration of a corporate structuring example that would not be recognized as a bar to FCRA governance, the FTC proposed the following:

> XYZ Inc. is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It restructures its operations so that public record information is assembled and maintained only by its corporate affiliate, ABC Inc. XYZ continues operating as a consumer reporting agency but ceases to comply with the FCRA obligations of a consumer reporting agency that compiles and maintains files on

---

[9] *See also Oregon Laborers-Employers Health & Welfare Trust Fund v. All State Industrial, Marine Cleaning, Inc.*, 850 F. Supp. 905 (D. Or. 1994), *CitiMortgage, Inc. v. NL, Inc.*, 2010 WL 1610411 (E.D.Mo. April 21, 2010); *McWilliams Ballard, Inc. v. Level 2 Development*, --- F.Supp.2d ----, 2010 WL 1068917 (D.D.C. March 24, 2010) (Applying Virginia common law); *Trabucco v. Intesa Sanpaolo, S.P.A.*, --- F.Supp.2d ----, 2010 WL 991621, *7-8 (S.D.N.Y. March 19, 2010).

[10] https://www.gpo.gov/fdsys/granule/CFR-2010-title16-vol1/CFR-2010-title16-vol1-sec611-2 (last visited April 28, 2018)

consumers on a nationwide basis, asserting that it no longer meets the definition found in FCRA section 603 (p), because it no longer maintains public record information. XYZ's conduct is a circumvention or evasion of treatment as a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis, and thus violates this section. [...]

In applying the federal standard adopted in *Thomas*, this Court cannot reasonably conclude that the FCRA's purpose "places importance on the corporate form." To the contrary, the FCRA expressly cautions that corporate form is irrelevant and that the use of corporate associations and structures to avoid its application are prohibited.

The Efx. Defendants' argument also fails for another reason. They are each obligated to provide the full file on each consumer. And the "file" consists not only of information stored in the database at that defendant's facility, but all information that could be included in a consumer report it may sell. The Third Circuit heard and rejected the same argument made by Trans Union under weaker circumstances – where the separate data that "could be" accessed by Trans Union was maintained in a database operated by an unrelated third party. The Court of Appeals rejected that argument:

> Trans Union concedes that Cortez requested her credit report on multiple occasions; nevertheless, it failed to provide her with the HAWK and OFAC alert information on her report. However, Trans Union again makes an argument similar to that discussed above. It argues that the OFAC and HAWK information is not part of the consumer's "file" under the FCRA and that, it was not required to disclose the information to Cortez.
> The FCRA defines "file" when used in connection with information on any consumer, as "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." 15 U.S.C. § 1681a(g). Trans Union attempts to avoid the obvious reach of that language by relying on the fact that the SDN List information was not part of its database; rather, as explained earlier, that information was separately maintained by Accuity. According to Trans Union, the information should not be considered part of the consumer's file for purposes of the FCRA. Not surprisingly, Trans Union cites no cases to support this argument. The argument requires us to ignore that the FCRA specifically provides that the duty of disclosure applies to "information on [a] consumer ... regardless of how the information is stored." 15 U.S.C. § 1681a(g). We do not believe that Congress intended to allow credit reporting companies to escape the disclosure requirement in § 1681a(g) by simply contracting with a third party to store and maintain information that would otherwise clearly be part of the consumer's file and is included in a credit report. **Congress clearly intended the protections of the FCRA to apply to all information furnished or that might be furnished in a consumer report**. *Gillespie v. Trans Union Corp.*, 482 F.3d 907, 909 (7th Cir.2007). Moreover, as the court in *Gillespie* noted, " 'file' denotes all information on the consumer that is recorded and retained by a consumer reporting agency that might be furnished, or has been furnished, in a consumer report on that consumer." *Id.* (quoting 16 C.F.R. pt. 600, app. § 603).

*Cortez v. Trans Union, LLC*, 617 F.3d 688, 711-12 (3d Cir. 2010) (emphasis added). Thus, when Plaintiff requested her disclosure from Equifax, even **IF** it was provided by EIS it was obligated to provide the full file – to include not only its own credit data, but also the other data it regularly sells. Either way, at this stage Plaintiff has more than alleged a plausible claim.

### Equifax, Inc. Demonstrates it is a CRA

By its own actions Equifax, Inc. has demonstrated to Plaintiff that it not only can but does reach across its own corporate structure divisions to access consumer information to provide credit reports to individuals. In an attempt to settle this case Equifax, Inc. engaged in discussion of settlement as evidenced by the Notice of Settlement filed with the Court by Mrs. Hinkle [Doc. 9]. It was agreed that Equifax, Inc. would provide a settlement agreement for Mrs. Hinkle's review. In an email regarding the settlement agreement counsel for Equifax, Inc., Kendall Carter of King & Spalding, LLP stated: "……. I will have the paperwork started and will send the settlement documents to you as soon as I have a credit file disclosure back from Equifax."

Mrs. Hinkle had not given ANY indication in ANY way that she would be amenable or give her consent for ANYONE to obtain her "credit file" or "credit report" for purposes of litigation. Mrs. Hinkle assumed that counsel was referring to a copy of the credit report Equifax had sent to her in October of 2017 because litigation is not a permissible purpose for obtaining a consumer's credit file and such an action would be a violation of 15 U.S.C. §1681q.

When Mrs. Hinkle received a draft settlement agreement for review it contained a paragraph citing an attachment (a Consumer Credit Report as of "Feb.__,2018")(not attached) and stating that she would not initiate any legal action based on its contents under the FCRA or any other applicable federal and/or state laws. Mrs. Hinkle was then alarmed in the extreme. She promptly checked Credit Karma to see if there actually had been an unauthorized pull by either

Equifax, Inc. or its counsel. There was in fact a "hard pull" of Mrs. Hinkle's credit report on February 6, 2018 by Equifax, Inc. which **HAD NOT** been authorized by her. When she objected and stated the paragraph must be removed she never heard from Mr. Carter again.

Plaintiff had NO idea that Equifax, Inc. would expect to attach an illegally obtained current credit report to a settlement agreement for a case which has NOTHING to do with accuracy of information contained in a credit report much less one obtained nearly four months after the credit report sent to her in response to her requests for something altogether different. Accuracy of information is NOT an issue to be settled in this case. If there are corporate boundaries that Equifax entities abide by to avoid it being deemed a CRA how was it that Equifax, Inc. which claims it is only a holding company and not a CRA was able to reach across into the data pool of EIS to secure a copy of Mrs. Hinkle's credit file for attachment to a settlement agreement? EIS was not involved in the litigation at that time. It is quite obvious that at least for purposes of litigation consumer information is passed around its supposedly separate companies when it suits their needs. Equifax, Inc. **IS** a CRA as demonstrated by its own actions. It cannot legally provide a copy of a consumer report for settlement or any purpose to ANYONE without the subject's consent that is based on data of its subsidiary without acting as a CRA.

## II.     Ms. Hinkle's FAC Fails to Plead Facts Sufficient to Support a Claim for Relief Pursuant to § 1681g.

Plaintiff was concise and specific in her first request letter, [Doc. 37-1] wishing no misunderstanding as to what EXACTLY she was requesting. Instead of what she requested she received a "**dispute response**" and a document stating it was an update of a "**credit report**" as the result of an investigation. Plaintiff then sent a second very detailed request so as to leave no doubt for Equifax as to the fact that she was not requesting a conventional credit report, and had

not requested or received any type of Equifax disclosure in the prior 12 months.[Doc. 37-2]

Plaintiff clearly did NOT in either letter request a mere credit file or credit report. [See Doc. 37-1 Ex.1,2]. She did NOT request any credit score, other risk scores or predictors or any ancillary information outside of the information that was specific to her as a consumer. There was no request for any information relating to processes or procedure of Equifax or how it manages any information about her in its systems.

The Efx. Defendants misconstrue Plaintiff's simple statement of FACT about not receiving a **full consumer file disclosure** as "conclusory". What Plaintiff received were two responses Equifax identified as an INVESTIGATION RESULT containing no information beyond her updated address and a "credit report" containing only her current and previous addresses and a partial list of "inquiries." Mrs. Hinkle's complaint, supported by exhibits, pleads in detail precisely what she was asking for and how Equifax failed to comply with her requests. Therefore her complaint should not be dismissed.

## A.     "Consumer file" is defined as the information contained in a consumer's credit report and disclosure.

The Efx. Defendants begin by conflating the words disclosure and credit report (disclosure/credit report), arguing they are synonymous and inserting words into definitions which are not there.  The FCRA does not use the term "disclosure/credit report".  In its arguments the Efx. Defendants begin by pointing to the Federal Trade Commission ("FTC")[11] interpretation of the term "file" and would mislead the court.  The 40 Years Commentary, p. 71 states:

---

[11] The interpretation and enforcement of the FCRA transferred from the FTC to Consumer Financial Protection Bureau ("CFPB") after passage of the Consumer Financial Protection Act of 2010. In preparation for the transition, in July 2011, the FTC published "40 Years of Experience with the Fair Credit Reporting Act -- An FTC Staff Report with Summary of Interpretations" ("40 Years Commentary"). The report stated that the CRA must disclose all items in the consumer's file, but that "ancillary records", for example, "a CRA's audit trail of changes it makes in the consumer's file, billing records, or the contents of a consumer relations folder, are not included in the term 'information in the consumer's file.'" *See* 40 Years Commentary, p. 71.

"[A]ncillary records" such as "a CRA's audit trail of changes it makes in the consumer file, billing records, or the contents of a consumer relations folder, are not included in the term "information in the consumer's file.'" *Id.*

The FTC does **NOT** state that all a CRA is required to provide in response to a request for a full file disclosure is a "credit report." Plaintiff stated clearly in her FAC that she did NOT request any "[A]ncillary records" (see Doc. 37 ¶ 47) and that can also be seen when reviewing the requests made to Equifax. [Doc. 37-1, Ex.1,2] A credit report is one **type of disclosure** which contains **credit** related information. However credit related information does not equate to all information contained in a CRA's files related to a consumer other than "[A]ncillary records". Related sections of the FCRA contain exceptions to what information can be provided in a credit report which is not shared with a consumer[12] but can be provided to third parties under certain circumstances. A traditional credit report by any name never meets the requirement MANDATED under the FCRA at 15 U.S.C. §1681g(a)(1). A report narrowly confined to one category of information does not mean it is necessarily a disclosure of **all** information recorded and retained in a CRA's file regarding a consumer at the time the report is generated. A credit report is not the only consumer report that is created from information in a CRA's file(s). The plain language of the FCRA requires, among other obligations, that CRAs "clearly and accurately disclose" to a requesting consumer "[a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1). The court should note that it does not say "[a]ll **CREDIT** information in the file... (emphasis added) ALL information means just that... **ALL** information outside of the exclusions as stated in § 1681g(a)(1)(B) and § 1681g(a)(2).

Plaintiff has pointed out that a legal "mandate" set forth as a "requirement" under law was not performed after conditions precedent to the requirement were met and the corresponding required action to trigger such an obligation under law took place. 15 U.S.C. §1681g is just such

---

[12] Such as 15 U.S.C. §1681c

a "mandate." Plaintiff has provided facts and exhibits which demonstrate the truth of her allegations and by the plain language of the law her complaint does not rise to the level of a legal conclusion. The Efx. Defendants, by conflating language and use of a clearly non-analogous case (*Gillespie*) would have the court accept that Congress did not mean exactly what it said but meant to use words that are simply not there[13].

The *Gillespie* case is a glaring misdirection. First the *Gillespie* plaintiff **was** pursuing what the statute clearly outlines as "ancillary information" which, since it could not be included in any report shared with a third party under any circumstances, does not have to be shared with the consumer either. Since Plaintiff AT NO TIME requested any such information, the *Gillespie* case is clearly not analogous to this case. Plaintiff's request letters were unquestionably explicit as to what she was asking for. The language used in her requests was directly quoted from the statute. The tactics employed by the Efx. Defendants in this case arise from two maneuvers; first to misrepresent the language of the statute and the interpretation of it within the FTC's official publication and second, they fail to note other controlling sections in regard to 1681g in the statute which are relevant.

The FCRA defines many different types of "files" all of which are considered to be "consumer files" ie; investigative, employment, insurance related reports etc. however it is quite specific in relation to section 1681g. There the definition is clear (page 31 of 40 yrs Doc.):

> Section 603g defines **"file,"** when used in connection with information on any consumer, to mean "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored."

---

[13] Congress knows how to mandate disclosure of the full contents of a consumer's file when it intends to require such disclosure. See, e.g., Barnhart v. Sigmon Coal Co., Inc., 534 U.S. 438, 452, 122 S. Ct. 941, 151 L.Ed.2d 908 (2002) (stating, "when Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion") (internal quotation marks and citation omitted).

The definition does **NOT** contain the words "consumer file" or "credit". The definition does not identify any *type* or *sub-type* of information, particular *type* of file or limitation as to the *type* of information contained in a file.

In addition the FTC interpretation takes the definition of what information is referred to by section 1681g even further (page 32 of 40 years doc) under "SCOPE":

> "The term "file" includes all information on the consumer that is recorded and retained by a CRA – regardless of how the information is stored – that *has been or might be* provided in a consumer report on that consumer. The term includes such information that a CRA has kept for archival purposes, because the definition includes all data "retained" and "stored" by the CRA."

The phrase **"has been or might be"** is key. Section 605(a) places time limits beyond which CRAs cannot include information in consumer reports, subject to exceptions set forth in 605(b). Two sub-sections of 605(a) are **key** to the type of information retained in a CRAs files on a consumer which cannot be included in a conventional "credit report" such as can be obtained by a consumer through annualcreditreport.com, with important exceptions that the average consumer is not even aware of (page 55 of 40 yrs doc):

**PROVISION LIMITED TO "ADVERSE" INFORMATION**
4. The seven-year reporting period applies only to "adverse" information that casts the consumer in a negative or unfavorable light. CRAs are not bound by that seven-year limit in reporting dates of employment and educational histories, because such dates are not "adverse" information.

**RETENTION OF INFORMATION IN FILES**
5. CRAs may retain adverse information described in subsection (a) **and furnish it in reports** for purposes that are exempt under subsection (b), described below. For example, the CRA may retain obsolete information for the purpose of furnishing it to persons engaged in (1) credit transaction or the underwriting of life insurance involving a principal amount of $150,000 or more, or (2) the employment of any individual with an annual salary expected to equal $75,000 or more. (emphasis added)

Section 605(b) states that the time period limitations in section 605(a) **"are not applicable in the case of any consumer credit report** to be used in connection with (1) a credit transaction involving, or which may reasonably be expected to involve, a principle amount of $150,000 or more; (2) the underwriting of life insurance involving, or which may reasonably be expected to

involve, a face amount of $150,000 or more; (3) the employment of any individual at an annual salary which equals, or which may reasonably be expected to equal $75,000, or more."

These sections would lead even an unsophisticated reader to understand that when information is "deleted" by reason of time limit prohibitions <u>for inclusion in a credit report</u> it isn't really "deleted" at all. Rather it is "suppressed" and **"may have been or might be"** disclosed without the consumer's knowledge to a third party under certain circumstances. This is just one example of the type of information which might be "**archived**" or considered "obsolete" by the CRA. Section 1681g clearly states that this information must be disclosed to the consumer when that consumer properly asks for it.

As the FCRA defines "file" at 15 U.S.C. § 1681a(g), it couldn't be any clearer as to what must be provided upon a consumer's PROPER request. The Seventh Circuit has held that, although a consumer's "entire file" need not be disclosed upon request; "complete copies of their consumer reports" must be disclosed. **The court should note the plural nature of "reports."**[14]

The United States Court of Appeals for the Third Circuit has ruled that a CRA may not evade disclosure requirements by, for example, "contracting with a third party to store and maintain information that would otherwise clearly be part of the consumer's file and is included in a credit report," *Cortez v. Trans Union, LLC,* 617 F.3d 688, 711 (3d Cir.2010), or by using "[c]orporate organization, reorganization, structure, or restructuring." to circumvent reporting requirements. 12 C.F.R. § 1022.140(a). *Jones v. Equifax* No. 3:15-cv-112-RJC-DSC United

---

14

... "[t]he term 'file' denotes all information on the consumer that is recorded and retained by a consumer reporting agency *that might be furnished, or has been furnished, in a consumer report on that consumer." Gillespie v. Trans Union Corp.,* 482 F.3d 907, 909 (7th Cir.2007) (emphasis in original) (citing 16 C.F.R. pt. 600, app. § 603).

States District Court, W.D. North Carolina, Charlotte Division April 11, 2016. Defendant's argument has no merit when looking at the plain language of the statute and case law.

**B.    Ms. Hinkle admits she received a copy of her credit disclosure from Equifax.**

The "**credit** file" described by Equifax as being "commonly called a Consumer Credit Report" received by Plaintiff is <u>**one type of disclosure**</u>. There was nothing communicated to Plaintiff to inform her that it was not Equifax but EIS which was responding to her requests or that she should ask any other entity for the information. Plaintiff specifically asked for <u>something other than a credit file or credit report</u>. She requested a <u>full consumer file disclosure</u> which would include "[a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1). The credit report sent to Plaintiff does not equate to Equifax providing her with a full **consumer file disclosure** UNLESS it has no other information in any of its files that relates to Mrs. Hinkle regardless of whether it **has** been or **might** be furnished in a consumer report of **any** kind. The Efx. Defendants do not state they have no other information in their files relating to Ms. Hinkle in their motion to dismiss.

For decades Defendants have collected and maintained consumer information on hundreds of millions of consumers.[15] Mrs. Hinkle is a consumer, has a driver's license, is a renter and has been a property owner, a small business owner and is 65 years of age. Is it plausible to believe that Equifax has no other information in its files beyond an address update that relates to

---

[15] https://www.inc.com/associated-press/equifax-data-money.html (last visited April 15, 2018)

The company and its competitors have in their files the personal financial information of tens of millions of Americans like you, going back decades...... It's also incredibly difficult to opt out of the system. You could live an all-cash lifestyle, never requesting credit from any bank, but still wind up with your information in the hands of the credit companies through less-obvious sources like cable or phone companies, property tax bills, or doctors' offices..... Customers like this are known as "thin file" borrowers, because of the lack of information, but that doesn't stop Equifax, Experian and TransUnion from building files on you.

her at that age?  What about the extensive information in Mrs. Hinkle's LexisNexis full file disclosure that showed a substantial amount of the information was **sourced from Equifax but was not provided** to her in response to her requests?  If Defendants have no other information in their file(s) than what was provided to Mrs. Hinkle in the credit file how is it they did provide additional information to LexisNexis? The Efx. Defendants are in the business of monetizing Mrs. Hinkle and millions of others as a commodity by selling personal information consumers may not even be aware is connected with them.  Equifax couldn't care less if the information they compile is correct and sought to deny Mrs. Hinkle the opportunity to review whatever information they have for accuracy which is her right under the FCRA.

Plaintiff asks the Court to appreciate the simplicity of this case and note that it isn't about whether any information related to Mrs. Hinkle that the Efx. Defendants have or may have provided to a third party is accurate or not.  The issue here is whether there was information in the Efx. Defendants' file(s) at the time of Mrs. Hinkle's request that was required to have been provided to her pursuant to her lawful request and wasn't.  THAT is the sole claim in this lawsuit and the only issue before this Court.  Defendants' argument that Mrs. Hinkle received the **full consumer file disclosure** that she specifically requested has no merit and should be rejected by the Court.

The Efx. Defendants argue that by Plaintiff's own admission they complied with § 1681g(a)(1) and relevant federal case precedent.  Plaintiff has shown that they have done no such thing and actually have attempted to distort the record with factual inaccuracies.  The Efx. Defendants erroneously argue that Plaintiff admits she received her full file disclosure when she received a copy of a credit report and the court should grant dismissal which is patently false, misleading and wholly improper considering the facts brought to bear at this stage of litigation.

**C.** **Mrs. Hinkle provides no factual basis for her assertion that the "credit report" she received was not her "full consumer file disclosure."**

Mrs. Hinkle has in the past used the website annualcreditreport.com to request a copy of her credit report and is fully aware of what information is included in one and what type. She knew that if she wanted further information she would have to make a specific request for it. As stated in her FAC after the hack of the Equifax database, the extensive media attention and public outcry it created, Mrs. Hinkle became even *more* aware that there appeared to be additional information about a consumer in a CRAs files than what was provided in a credit report which could be obtained online. This caused her to research further. Mrs. Hinkle discovered an abundance of public domain information that indicated there was more information that the CRA's held on consumers than was being disclosed in credit reports provided by them either through the web site or directly upon request to the individual CRA's. Of course, if a consumer only requests their credit report and that is provided to them electronically or in hard copy through the mail in response then the request has been satisfied.

Substantial reading and research revealed there was a considerable amount of information being provided about consumers to a host of entities and persons that was not necessarily directly related to specific credit accounts such as credit cards, car loans, payroll advances, or mortgages. Much of that information would certainly come under the purview of 15. U.S.C. § 1681a(d) "character, general reputation, personal characteristics, or mode of living", all of which may most certainly be used to factor a consumer's eligibility for credit, insurance, home rentals, and even deposit amounts for utilities or could prevent a consumer from obtaining all or any of the foregoing as well as numerous other aspects of a person's life.

One very disturbing case involved false and derogatory information in a consumer's file causing a consumer extreme embarrassment and expense even to the point of having his auto

insurance to be cancelled as a result of a credit report provided by O'Hanlon Reports, Inc., a CRA.[16] The information was later found to be patently false and uncorroborated.

Plaintiff was very distressed to know that such damaging false information was possessed and recklessly used by a CRA. Further research revealed there were many other court cases brought in a number of jurisdictions involving erroneous criminal or false employment information provided by CRA's to potential landlords or employers causing consumers to be denied housing or employment as a result. Based on Plaintiff's research even a blind man could see that there was more information being provided to certain customers of CRA's than just current credit accounts that a consumer receives in a "credit report"(by any name) and in a number of cases that information was erroneous with negative consequences, sometimes extremely harmful to the consumer.

The facts demonstrate that the Efx. Defendants are not merely a **Credit** Reporting Agency. Equifax and EIS *operate* as one entity and are a **CONSUMER** Reporting Agency under the FCRA. They collect, maintain and sell an abundance of **CONSUMER** information having the ability to impact lives that is not just credit information. They respond with a current credit report when a lawful request is made for a **full consumer file disclosure** of ALL information then in an attempt to escape liability, seek to convince the courts their actions are in compliance with the FCRA. For far too long Equifax and other major CRA's have carefully conditioned

---

[16] *Millstone v O'Hanlon Reports, Inc.* 383F.Supp. 269 (1974) The file shows that you are very much disliked by your neighbors at that location [Millstone's Washington residence], and were considered to be a 'hippy type'. The file indicates that you participated in many demonstrations in Washington, D. C., and that you also housed out-of-town demonstrators during demonstrations. The file indicates that these demonstrators slept on floors, in the basement and wherever else there was room on your property. The file shows that you were strongly suspected of being a drug user by neighbors but they could not positively substantiate these suspicions. You are shown to have had shoulder length hair and a beard on one occasion while living in Washington, D. C. The file indicates that there were rumors in the neighborhood that you had been evicted by neighbors from three previous residences in Washington, D. C. prior to living at the 48th Street, N. W. location.

courts, regulators and the public to think of a full file disclosure (precisely what a consumer is entitled to and MANDATED by law *when a proper request is made*) as a credit report containing only certain **current** but **no archived** information and is not representative of all information they retain about consumers keeping the information potentially subject to dispute minimal. Undoubtedly minimizing costs, in the name of profits is a powerful incentive. What a consumer doesn't know and can't dispute, can't hurt the bottom line of the company. Avoiding consumer disputes of information which might be erroneous is healthy for a CRA's bottom line even if by doing so the public is kept in the dark; unaware of what harm the results of such deception they may already be suffering. Mrs. Hinkle has a right under the law to see ALL information in her consumer file(s) to review it for accuracy and dispute anything that is erroneous. That is all that she was interested in.

The annualcreditreport.com website[17] (created and maintained by the major CRA's) has NO place on it where a consumer can request their full consumer file disclosure but instead only provides the consumer with the option to request a credit report. (See Exhibit 4 attached) but according to Defendant's Motion to Dismiss [Doc. 44-15 ¶3]... **"As discussed above, a credit report goes to a third party."** Sometimes deception is just "in your face". If Congress intended that consumers receive only a credit report, it would have stated exactly that in the statute rather than being very specific in the language of § 1681g.[18] The truth is revealed with a common sense reading of the plain language of the statute.

---

[17] Last visited April 26, 2018
[18] Congress knows how to mandate disclosure of the full contents of a consumer's file when it intends to require such disclosure. See, e.g., Barnhart v. Sigmon Coal Co., Inc., 534 U.S. 438, 452, 122 S. Ct. 941, 151 L.Ed.2d 908 (2002) (stating, "when Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion") (internal quotation marks and citation omitted).

There are multiple types of consumer reports that are generated by the CRA's based on

information they have in their files regarding such things as rental history, criminal background,

public records, employment etc. so the argument that all the Efx. Defendants had to do is provide

information to Mrs. Hinkle that is specific to one particular type (a credit report) is fatally

flawed. Mrs. Hinkle is entitled to the whole five pound bag of consumer information not just a

spoon full of credit data. The case law that the Efx. Defendants cite in their argument is off

point, not analogous to this case and not persuasive at minimum.[19] Even the CFPB has declared

in a 2017 Consent Order that Equifax Inc. is in fact subject to the FCRA[20] On page 6 under **Part

IV** the Order states:

> "Equifax Inc. is headquartered in Atlanta, Georgia, and compiles and maintains financial, consumer, and
> commercial data across the nation and worldwide. Equifax Inc. is the parent company of Equifax Consumer
> Services LLC." "Equifax Inc. is a "covered person" as that term is defined by the CFPA, 12 U.S.C.
> §5481(6)

Equifax consents to that finding by the CFPB in its Stipulation and Consent[21] page3:

> "Equifax agrees that the facts described in **Section IV** of the Consent Order will be taken as true and
> be given collateral estoppel effect, without further proof, in any proceeding before the Bureau to enforce
> the Consent Order, or in any subsequent civil litigation by the Bureau to enforce the Consent Order or its
> rights to any payment or monetary judgment under the Consent Order. (emphasis added)

It seems that the outdated "unbroken line of authority" Equifax cites has been replaced by more

recent regulatory findings and statements by Equifax's own legal representatives.[22]

In addition to 10 different consumer reports containing erroneous information sourced

from Equifax factually alleged in her FAC ¶39, Plaintiff is aware of inquiries made with her

consent in 2017 not showing in the "credit report" sent to her in response to her second request

---

[19] *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748 (D. Md. 2015) a sexual assault case dismissed on a Fourth Amended
Complaint on "threadbare recitals of crucial elements", *Anderson v. Sara Lee Corp.*, 508 F.3d 181 (4th Cir. 2007) was
Reversed on Appeal in favor of Plaintiff, *DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.*, was Affirmed on
Appeal for the Plaintiff, *Avanti Hearth Prod., LLC v. Janifast, Inc.*, No. 3:10-CV-00019-FDW, 2010 WL 3081371
(W.D.N.C. Aug. 6, 2010) contained no such language cited.

[20] https://files.consumerfinance.gov/f/documents/201701_cfpb_Equifax-consent-order.pdf

[21] https://files.consumerfinance.gov/f/documents/201701_cfpb_Equifax-stipulation.pdf
[22] See Exhibit 3

for a **full consumer file disclosure**. The Efx. Defendants do not deny they provided the information contained in the LexisNexis report. The Efx. Defendants' arguments have absolutely no merit when looking at the facts on the record, and Plaintiff's First Amended Complaint. Their motion should be denied in its entirety.

## CONCLUSION

The Efx. Defendants, are fully aware what the requirements of the FCRA are. They know whether they have any information in their files that relates to Mrs. Hinkle that was not disclosed to her after her requests. The fact that the Efx. Defendants did not categorically state there is no additional information relating to Mrs. Hinkle as a consumer in their files or deny they provided the information in the LexisNexis full file disclosure in their Motion to Dismiss leads to a reasonable assumption there would be more information that was not disclosed as required under 15 U.S.C. § 1681g. The Equifax Defendants' Motion to Dismiss should be denied and this case should go forward to Discovery in order to answer that question factually.

**WHEREFORE**, because the Defendants have failed to bring forth any cognizable or legitimate arguments for dismissal before this Honorable Court, Plaintiff respectfully requests the Court DENY their Motion to dismiss and allow Plaintiff's claim to move forward to trial on the merits. In the event the Court finds that Plaintiff has failed to state a claim as alleged by the Equifax Defendants, Plaintiff requests leave of this court to file an Amended Complaint to cure any deficiencies identified by the Court.

Respectfully Submitted,

Teri Lynn Hinkle
19 Mossy Creek Trail
Murphy, North Carolina 28906
828-494-2007
queensongbird@gmail.com