UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
(Asheville)

| | | |
|---|---|---|
| TERI LYNN HINKLE, | ) | |
| | ) | Case No.: 1:18-cv-00007-MR-DLH |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| EXPERIAN INFORMATION | ) | |
| SOLUTIONS INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS EQUIFAX INC.'S AND EQUIFAX INFORMATION SERVICES LLC'S
REPLY BRIEF IN SUPPORT OF
<u>MOTION TO DISMISS FIRST AMENDED COMPLAINT</u>**

Bradley J. Lingo
North Carolina Bar No. 44018
KING & SPALDING LLP
100 North Tryon Street
Suite 3900
Charlotte, North Carolina 28202
Tel: (704) 503-2573
blingo@kslaw.com
LR 83.1 Counsel
*Counsel for Equifax Inc. and Equifax Information Services, LLC*

## TABLE OF CONTENTS

**ARGUMENT** ..........................................................................................................................1

    **I.**    **Ms. Hinkle Does Not Allege in Her FAC that Equifax Inc. Violated § 1681x.** ................1

    **II.**   **Equifax Inc. Is Not a Consumer Reporting Agency.** ...........................................................1

    **III.**  **Corporate Form and the Doctrine of Piercing the Corporate Veil is Governed by State Law.** ..................................................................................................................4

    **IV.**  **Ms. Hinkle's FAC Fails to Plead Facts Sufficient to Support a Claim for Relief Pursuant to § 1681g.** ..............................................................................................8

**CONCLUSION** .....................................................................................................................11

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Avanti Hearth Prod., LLC v. Janifast, Inc.*,
   No. 3:10-CV-00019-FDW, 2010 WL 3081371 (W.D.N.C. Aug. 6, 2010) ...............................6

*Channing v. Equifax, Inc.*,
   No. 5:11-CV-293-FL, 2013 WL 593942 (E.D.N.C. Feb. 15, 2013).........................................2

*Cortez v. Trans Union, LLC*,
   617 F.3d 688 (3d Cir. 2010)...............................................................................................6, 7

*Frihat v. Citimortgage, Inc.*,
   No. 07-CV-946, Doc. 60 (W.D. Mo. Dec. 1, 2009) ................................................................2

*Gillespie v. Trans Union Corp.*,
   482 F.3d 907 (7th Cir. 2007) ........................................................................................7, 9, 10

*Greear v. Equifax, Inc.*,
   No. 13-11896, 2014 WL 1378777 (E.D. Mich. Apr. 8, 2014) ..................................................2

*Guardian Life Ins. Co. of Am. v. Finch*,
   395 F.3d 238 (5th Cir. 2004) ...................................................................................................6

*Henderson v. Trans Union, LLC*,
   No. 3:14-CV-00679-JAG, 2017 WL 1734036 (E.D. Va. May 2, 2017) ..................................8

*Moran v. The Screening Pros, LLC*,
   No. 12-57246, Dkt. 22 (9th Cir. Oct. 4, 2013)..........................................................................8

*Peacock v. Thomas*,
   516 U.S. 349 (1996)..................................................................................................................6

*Persson v. Equifax Inc.*,
   No. 7:02-CV-511, Doc. 80 (W.D. Va. Oct. 28, 2002).............................................................2

*Slice v. Choicedata Consumer Servs., Inc.*,
   No. 3:04-CV-428, 2005 WL 2030690 (E.D. Tenn. Aug. 23, 2005).........................................2

*Thomas v. Peacock*,
   39 F.3d 493 (4th Cir. 1994), *rev'd*, 516 U.S. 349 (1996) ......................................................5, 6

*Weiler v. Equifax Inc.*,
   No. 2:99-CV-936, Doc. 29 (W.D. Pa. Nov. 16, 2000) .......................................................2, 4

**Statutes**

Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x ........................................................... *passim*

15 U.S.C. § 1681a(f) ...............................................................................................................2

15 U.S.C. § 1681g(a)(l).................................................................................................. *passim*

15 U.S.C. § 1681x....................................................................................................................1

Consumer Financial Protection Act of 2010...........................................................................8

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) .........................................................................1, 11

Federal Rule of Evidence 408..................................................................................................8

40 Years of Experience with the Fair Credit Reporting Act – An FTC Staff Report
    with Summary of Interpretations .....................................................................................8, 9

Defendants Equifax Inc.'s and Equifax Information Services LLC ("EIS"), by counsel, file their Reply in further support of their Motion to Dismiss ("Motion to Dismiss," Doc. 43) the First Amended Complaint for Violations of the FCRA ("FAC," Doc. 37) and in reply to Plaintiff's Opposition to Equifax Inc.'s and EIS's Motion to Dismiss ("Opposition," Doc. 46). For the reasons set forth below and in its opening brief, Equifax Inc. and EIS's Motion to Dismiss should be granted.

## ARGUMENT

### I. Ms. Hinkle Does Not Allege in Her FAC that Equifax Inc. Violated § 1681x.

This is a case under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x. Specifically, Plaintiff Teri Lynn Hinkle filed her FAC seeking recovery against Equifax Inc. and EIS under 15 U.S.C. § 1681g(a)(l). (Doc. 37, Count III, ¶¶ 62-65). In the Motion to Dismiss, Equifax Inc. moved to dismiss her claim pursuant to Federal Rule of Civil Procedure 12(b)(6) because it is not a consumer reporting agency; thus, it cannot be liable under § 1681g of the FCRA. (Doc. 44 at 3-8).

In her Opposition, Ms. Hinkle now argues that she made claims against Equifax Inc. and EIS under § 1681g, and against Equifax Inc. under § 1681x. (Doc. 46 at 2, 4, 5). This is incorrect. Nowhere in her FAC does Ms. Hinkle make any allegations that Equifax Inc. violated § 1681x nor does she even mention § 1681x in her FAC. (Doc. 37). Moreover, § 1681x does not provide a private right of action; rather, it gives authority to the Bureau of Consumer Financial Protection to prescribe regulations. 15 U.S.C. § 1681x.

### II. Equifax Inc. Is Not a Consumer Reporting Agency.

In her Opposition, Ms. Hinkle argues without any factual or legal basis that correspondence to and from Equifax Inc. concerning the activities of its subsidiaries establishes that Equifax Inc. itself is a consumer reporting agency. (Doc. 46 at 4). Ms. Hinkle further argues without any factual

1

or legal basis that anything that bears the name Equifax is attributable to Equifax Inc., and not any of its subsidiaries or affiliates. (*Id.* at 4-5). Ms. Hinkle's arguments ignore the definition of a consumer reporting agency stated in the FCRA:

> any person which, for monetary fees … regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties.

15 U.S.C. § 1681a(f). Equifax Inc.'s activities in relation to its subsidiaries do not make it a consumer reporting agency as defined by the FCRA. Rather, the sole issue is whether Ms. Hinkle provides a factual and legal predicate to allege that Equifax Inc.'s activities fit the definition of a consumer reporting agency as stated in § 1681a(f). Ms. Hinkle fails to do so in her FAC. In her Opposition, Ms. Hinkle does not posit a legal basis to hold the parent of a consumer reporting agency necessarily liable for the acts of the consumer reporting agency itself.

In its Motion to Dismiss, Equifax cited numerous cases that hold that Equifax Inc. is not a consumer reporting agency. (Doc. 44 at 5-6 (citing *McDonald v. Equifax Inc.*, No. 3:15-CV-3212-B, 2017 WL 879224 (N.D. Tex. Mar. 6, 2017); *Greear v. Equifax, Inc.*, No. 13-11896, 2014 WL 1378777, at *1 (E.D. Mich. Apr. 8, 2014); *Channing v. Equifax, Inc.*, No. 5:11-CV-293-FL, 2013 WL 593942, at * 2 (E.D.N.C. Feb. 15, 2013); *Slice v. Choicedata Consumer Servs., Inc.*, No. 3:04-CV-428, 2005 WL 2030690, at *3 (E.D. Tenn. Aug. 23, 2005); *Frihat v. Citimortgage, Inc.*, No. 07-CV-946, Doc. 60 at 4-5 (W.D. Mo. Dec. 1, 2009) (Doc. 44-1); *Persson v. Equifax Inc.*, No. 7:02-CV-511, Doc. 80 (W.D. Va. Oct. 28, 2002) (Doc. 44-2); *Weiler v. Equifax Inc.*, No. 2:99-CV-936, Doc. 29 at 2-4 (W.D. Pa. Nov. 16, 2000) (Doc. 44-3).

In her Opposition, Ms. Hinkle argues that the issue of whether Equifax Inc. is a consumer reporting agency should be resolved at the summary judgment stage. (Doc. 46 at 5). However, Ms. Hinkle's FAC supplies the necessary facts to resolve the issue now, which makes this case

2

differently situated than *Jones v. Equifax, Inc.* upon which Ms. Hinkle relies. Ms. Hinkle concedes that Equifax Inc. is a parent holding company of EIS. (Doc. 37 ¶7). Ms. Hinkle alleged in her FAC:

> 22. In response to her very specific request for her **full consumer file disclosure** Plaintiff received a letter dated September 21, 2017, requesting payment and further documentation to establish identity and address in order to receiver her "Equifax credit file." See Exhibit 4 attached. Several days later Plaintiff received a document titled "EQUIFAX-CREDIT FILE" from Equifax.

(Doc. 37 ¶ 22). Ms. Hinkle's own exhibit confirms that EIS, not Equifax Inc., responded to her request:

> Please submit the requested identification/address information and this letter to the address below.
>
> Equifax Information Services LLC
> PO BOX 105167
> Atlanta. GA 30348-5167
>
> \* \* \*
>
> Thank you for the opportunity to assist you.
>
> Equifax Information Services LLC

(Doc. 37-1 at 13).

In response to her second request, Ms. Hinkle alleges that she again received a copy of her "EQUIFAX-CREDIT FILE." (Doc. 37 ¶ 33). This document also made reference to EIS:

> The letter also contained a "Research Request Form" for the purpose of filing any dispute and instructed that it be mailed to Equifax Information Services LLC.

(Doc. 37 at 33; Doc. 46-2 at 3).

All of the documents provided by Ms. Hinkle indicate that they were provided by EIS. Ms. Hinkle provided no documents that indicate that they were provided by Equifax Inc. Moreover, Ms. Hinkle fails to cite a single decision that holds that Equifax Inc. is a consumer reporting agency. Accordingly, the Court should grant the Motion to Dismiss Equifax Inc.

3

**III. Corporate Form and the Doctrine of Piercing the Corporate Veil is Governed by State Law.**

In her Opposition, Ms. Hinkle admits that she alleges that Equifax Inc. and EIS "*operate in an alter ego* capacity." (Doc. 46 at 5). She alleges without factual enhancement that Equifax Inc. and EIS operate as a single FCRA governed consumer reporting agency. (*Id.* at 6). She relies on a website to argue, "Equifax Inc. . . . even states on its website, 'Under FCRA, we are a Consumer Reporting Agency and subject to its requirements.'" (*Id.*). This is false. The website clearly indicates by its language and URL address that it is operated as a subsidiary of Equifax Inc., and not as or by Equifax Inc. itself:



FCRA, *The Work Number*, and Your Privacy

The Fair Credit Reporting Act, or FCRA, regulates how credit reporting agencies and others handle your information. Under FCRA, we are a Consumer Reporting Agency and subject to its requirements. We're committed to safeguarding your privacy, and we fully comply with FCRA requirements.

That means we do many things to protect your rights as a consumer. Here are a few of the most important ones:

- We validate the identity of all users of the system before granting access to make sure they have a legal right to see the information about you that your employer provided.

- We require all users of the system to tell us why they need a consumer's employment, income, or other data. In FCRA terms, this reason is called a Permissible Purpose.

- We will provide you, free of charge, one Employment Data Report every 12 months. Your Employment Data Report is available immediately online or you can request the report by calling 866-604-6570.

- If you believe the information contained in your Employment Data Report is incorrect, we will contact the employer and investigate. Access to your information will be blocked during the investigation. To request an investigation, call us at 866-222-5880.

Equifax and the Equifax marks used herein are trademarks of Equifax Inc. © 2018 *Equifax Workforce Solutions, a/k/a TALX Corporation, a wholly owned subsidiary of Equifax Inc.*, Atlanta, Georgia. All rights reserved.

4

https://www.theworknumber.com/Employees/FCRA/index.asp (emphasis added)

Ms. Hinkle further argues, "Mrs. Hinkle sent her requests for a **full consumer file disclosure** specifically to Equifax not EIS. [Doc. 37-1, Ex. 1,2]" However, her letters were clearly addressed to

> P.O. Box 740256
> Atlanta, GA 30374

(Doc. 37-1 at 3, 7). The Consumer Financial Protection Bureau ("CFPB") states that the foregoing address is the address for Equifax Information Services LLC:

> How can I contact the nationwide credit reporting companies with general inquiries?
>
> Equifax
>
> Online: www.ai.equifax.com/CreditInvestigation
> By mail: Click here to download the dispute form
> Mail the dispute form with your letter to:
> Equifax Information Services LLC
> P.O. Box 740256
> Atlanta, GA 30374
> By phone: Phone number provided on credit report or (800) 864-2978

https://www.consumerfinance.gov/ask-cfpb/how-can-i-contact-the-nationwide-credit-reporting-companies-with-general-inquiries-en-1225/

Ms. Hinkle relies on *Thomas v. Peacock*, 39 F.3d 493, 503 (4th Cir. 1994), *rev'd*, 516 U.S. 349 (1996), to argue that federal law controls the issue of piercing the corporate veil. (Doc. 46 at 8). However, *Thomas* is not authority for a rule that federal law governs this issue generally; instead, the Thomas court "concluded that the determination of whether to pierce the corporate veil *in an ERISA action* is made under federal law." *Id.* (emphasis added). ERISA is a totally different type of statute from the FCRA when it comes to federal common law. It is accepted doctrine that Congress specifically delegated to federal courts broad power to create

5
Case 1:18-cv-00007-MR-DLH   Document 48   Filed 05/09/18   Page 9 of 16

federal common-law rights and obligations under employee benefit plans. Courts create rights and obligations to fill gaps in ERISA. *See, e.g.*, *Guardian Life Ins. Co. of Am. v. Finch*, 395 F.3d 238, 240 (5th Cir. 2004). Thus, ERISA cases applying common law are inapposite to cases involving the FCRA.

Far more importantly, Ms. Hinkle fails to mention that the United States Supreme Court reversed the *Thomas* decision on the precise point on which Ms. Hinkle relies:

> Thomas' veil-piercing claim does not state a cause of action under ERISA and cannot independently support federal jurisdiction. Even if ERISA permits a plaintiff to pierce the corporate veil to reach a defendant not otherwise subject to suit under ERISA, Thomas could invoke the jurisdiction of the federal courts only by independently alleging a violation of an ERISA provision or term of the plan. Piercing the corporate veil is not itself an independent ERISA cause of action, "but rather is a means of imposing liability on an underlying cause of action." 1 C. Keating & G. O'Gradney, Fletcher Cyclopedia of Law of Private Corporations § 41, p. 603 (perm. ed.1990). Because Thomas alleged no "underlying" violation of any provision of ERISA or an ERISA plan, neither ERISA's jurisdictional provision, 29 U.S.C. § 1132(e)(1), nor 28 U.S.C. § 1331 supplied the District Court with subject-matter jurisdiction over this suit.

*Peacock v. Thomas*, 516 U.S. 349, 353–54 (1996).

Ms. Hinkle's conclusory allegations are insufficient to sufficiently plead her alter ego claim under North Carolina law. *See Avanti Hearth Prod., LLC v. Janifast, Inc.*, No. 3:10-CV-00019-FDW, 2010 WL 3081371, at *4–5 (W.D.N.C. Aug. 6, 2010). Ms. Hinkle cannot save her claims against Equifax Inc. by creating a theory having no basis in reality. Ms. Hinkle's allegations are not well-pled and therefore, should not be afforded any weight. Accordingly, the Court should dismiss Ms. Hinkle's claims against Equifax Inc.

In her Opposition, Ms. Hinkle argues that, pursuant to *Cortez v. Trans Union, LLC*, 617 F.3d 688 (3d Cir. 2010), EIS and Equifax Inc. are "each obligated to provide the full file on each consumer." (Doc. 46 at 11). This is flat wrong. *Cortez* involved a CRA that accessed information separately maintained by a third party. *Cortez*, 617 F.3d at 711. The CRA argued that it was not

6

required by § 1681g to provide the separately maintained information because it was not part of its database. *Id.* The court, relying on *Gillespie v. Trans Union Corp.*, 482 F.3d 907, 908-09 (7th Cir. 2007), held that § 1681g requires a CRA to provide to a consumer in a consumer disclosure, all information that it would furnish to a third party in a consumer report *regardless of where it might be stored*. *Id.* at 712.

Applying *Cortez* here, § 1681g requires EIS to provide all information to a consumer in a consumer disclosure that it would furnish to a third party in a consumer report regardless of where the information might be stored. However, *Cortez* has no application to Equifax Inc. because it is not a CRA. Moreover, § 1681g cannot impose a requirement on Equifax Inc. because it does not furnish consumer reports. Simply put, Equifax Inc. has no obligation to provide all information to a consumer in a consumer disclosure that it would furnish to a third party in a consumer report because it does not furnish consumer reports.

Ms. Hinkle argues in her Opposition that Equifax Inc. improperly accessed her consumer disclosure during settlement negotiations. (Doc. 46 at 14-15). As Ms. Hinkle states in her Opposition:

> In an attempt to settle this case Equifax, Inc. engaged in discussion of settlement as evidenced by the Notice of Settlement filed with the Court by Mrs. Hinkle [Doc. 9]. It was agreed that Equifax, Inc. would provide a settlement agreement for Mrs. Hinkle's review. In an email regarding the settlement agreement counsel for Equifax, Inc., Kendall Carter of King & Spalding, LLP stated: "....... I will have the paperwork started and will send the settlement documents to you as soon as I have a credit file disclosure back from Equifax."
>
> Mrs. Hinkle had not given ANY indication in ANY way that she would be amenable or give her consent for ANYONE to obtain her "credit file" or "credit report" for purposes of litigation. Mrs. Hinkle assumed that counsel was referring to a copy of the credit report Equifax had sent to her in October of 2017 because litigation is not a permissible purpose for obtaining a consumer's credit file and such an action would be a violation of 15 U.S.C. §1681q.

(Doc. 46 at 12). Mr. Carter, Of Counsel in this matter, routinely represents Equifax Inc. and EIS, and he is currently representing both entities in this case. FCRA plaintiffs routinely seek and are provided a free copy of their consumer disclosure as part of settlement negotiations. Notwithstanding the protection afforded by Federal Rule of Evidence 408, Mr. Carter believed that Ms. Hinkle sought an updated copy of her consumer disclosure: (1) as part of normal settlement negotiations, and (2) that is the reason why she filed this action. (Doc. 1; Doc. 37). As regular counsel for EIS, Mr. Carter sought and obtained a consumer disclosure from EIS because he believed Ms. Hinkle sought one pursuant to § 1681g as part of this lawsuit. As counsel for both, Mr. Carter is also a limited agent for both. The corporate boundaries of Equifax Inc. and EIS remained intact.

## IV. Ms. Hinkle's FAC Fails to Plead Facts Sufficient to Support a Claim for Relief Pursuant to § 1681g.

In her FAC and Opposition, Ms. Hinkle repeatedly states that she requested her "full consumer file disclosure." (Doc. 37; Doc. 46). However, that term cannot be found anywhere in the FCRA, nor does Ms. Hinkle provide a source for that term.

On the other hand, the term "consumer file" is defined as the information contained in a consumer's credit report/disclosure. The Federal Trade Commission ("FTC")[1] interpreted the term "file" in 1681g to be limited to material included in a consumer report that would be sent to a third

---

[1] The interpretation and enforcement of the FCRA transferred from the FTC to Consumer Financial Protection Bureau ("CFPB") after passage of the Consumer Financial Protection Act of 2010. In preparation for the transition, in July 2011, the FTC published "40 Years of Experience with the Fair Credit Reporting Act – An FTC Staff Report with Summary of Interpretations" ("40 Years Commentary") (available at https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf). *Henderson v. Trans Union, LLC*, No. 3:14-CV-00679-JAG, 2017 WL 1734036, at *3 n.6 (E.D. Va. May 2, 2017) The CFPB has not issued any contrary interpretation and has cited the 40 Years Commentary in amicus briefs on other topics. *See Moran v. The Screening Pros, LLC*, No. 12-57246, Dkt. 22 (9th Cir. Oct. 4, 2013).

8

party. *See* 40 Years Commentary, p. 71. "[A]ncillary records" such as "a CRA's audit trail of changes it makes in the consumer's file, billing records, or the contents of a consumer relations folder, are not included in the term 'information in the consumer's file.'" *Id.* The Seventh Circuit in *Gillespie* held that "file" meant information contained in a consumer report produced by the CRA. *See* 482 F.3d at 908-10. *Gillespie* cites the FTC's commentary on §1681g(a)(1) regarding the limited scope of the term "file": "[t]he term 'file' denotes all information on the consumer that is recorded and retained by a consumer reporting agency that might be furnished, or has been furnished, in a consumer report on that consumer." *Id.* at 909 (quoting 16 C.F.R. pt. 600, app. § 603). "Congress, it seems, chose to limit the right to contest information to material *actually contained in consumer reports*. And of course it was free to draw the line as it did." *Gillespie*, 482 F.3d at 910 (emphasis added). Ms. Hinkle makes a number of misleading reference to Gillespie, most of which can be corrected by quoting its conclusion:

> However, the Committee Report indicates that the amendment aimed to give consumers better access to complete copies of their consumer reports: "Section 408 explicitly requires consumer reporting agencies to provide, upon request, all information in the consumer's file. The Committee intends this language to ensure that a consumer will receive a copy of that consumer's report, rather than a summary of the information contained therein." S.Rep. No. 104–185, at 41 (1995) (emphasis added). While this legislative history is not dispositive, it suggests Congress wanted consumers to receive exactly what Cinson and Gillespie got from Trans Union—complete copies of their consumer reports, not their entire files in whatever form maintained by the CRA.
>
> Finally, Cinson and Gillespie argue other parts of the FCRA show Congress meant to require CRAs to disclose more than the information in their consumer reports. They point, for example, to § 1681c, which (as we have discussed) requires creditors to provide the date of delinquency to CRAs along with delinquent account information; and to § 1681i, which allows consumers to request reinvestigation of certain information CRAs get from their customers. However, the fact that Congress requires creditors to give CRAs dates of delinquency but does not require that those dates be disclosed (or included in a consumer credit report) is of no great moment. Congress, it seems, chose to limit the right to contest information to material actually contained in consumer reports. And of course it was free to draw the line as it did.

9

> The language of § 1681g(a)(1), the FTC's interpretive guideline, and the Senate Committee Report all support Trans Union's argument that "file" means information included in a consumer report. We affirm the judgment of the district court.

*Gillespie*, 482 F.3d at 910-11.

Ms. Hinkle suggests that Equifax maintains two types of information that it did not provide to her. First, she suggests that Equifax maintains additional information that it provides to third parties in consumer reports, but that it does not provide to consumers in consumer disclosures. She suggests that such information exists in her file, but she offers no offers no factual enhancement that Equifax failed to provide her with such information. (Doc. 46 at 2, 17, 19, 27).[2] Second, Ms. Hinkle suggests that Equifax maintains additional information that it does not provide to third parties in consumer reports, and that it does not provide to consumers in consumer disclosures. (Doc. 46). Again, she offers only conjecture and speculation to support her claims. (*Id.*). To the extent such information exists, it is not part of the file to be produced under §1681g as interpreted by the FTC and courts.

Ms. Hinkle's sole allegation against Equifax Inc. and EIS is that she did not receive her "full consumer file disclosure" as requested. (*See* Doc. 37 ¶¶ 21-22, 3d). Ms. Hinkle states that she sent "Equifax" a request for her full consumer file disclosure, and in response received a copy of her "credit report." (*Id.* at ¶ 33). She does not dispute that she received this document upon her request, as required by § 1681g. As defined by case law discussed above, a credit report goes to a third party. Because Ms. Hinkle, the consumer, was the recipient, what she received was exactly what she requested – a full consumer file disclosure. Her suggestion that she received just a spoon

---

[2] Ms. Hinkle makes a vague allegation as to a LexisNexis disclosure allegedly provided to her, (Doc. 46 at 20, 25), and information she obtained from annualcreditreport.com, but she does not provide any detail as to the information referenced or that such information existed on her EIS credit file. This allegation, therefore, should be afforded no weight.

full of credit data rather than the whole five pound bag (Doc. 46 at p. 24) is pure speculation and should be disregarded.

By Ms. Hinkle's own admission, Equifax Inc. and EIS complied with § 1681g(a)(1) and relevant federal case precedent by providing her consumer disclosure to her. Accordingly, Ms. Hinkle has failed to allege sufficient facts to support a cause of action against Equifax Inc. and EIS under the FCRA, and the Court should dismiss her claim under Rule 12(b)(6).

## **CONCLUSION**

For the reasons set forth above and in its original brief, Equifax Inc. and EIS request that this Court grant their Motion to Dismiss and dismiss Ms. Hinkle's FAC pursuant to Rule 12(b)(6) and grant such other relief as the Court deems necessary.

Respectfully submitted this 9th day of May, 2018.

                                        */s/ Bradley J. Lingo*
                                        Bradley J. Lingo
                                        North Carolina Bar No. 44018
                                        KING & SPALDING LLP
                                        100 North Tryon Street, Suite 3900
                                        Charlotte, North Carolina 28202
                                        Tel: (704) 503-2573
                                        Fax: (704) 503-2622
                                        blingo@kslaw.com
                                        LR 83.1 Counsel
                                        *Attorneys for Defendant Equifax Inc. and Equifax Information Services LLC*

Of Counsel:
Kendall Carter
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309
Tel: (404) 572-4600
Fax: (404) 572-5100
kcarter@kslaw.com

# CERTIFICATE OF SERVICE

This is to certify that I have had this day electronically filed a true and correct copy of the foregoing DEFENDANTS EQUIFAX INC.'S AND EQUIFAX INFORMATION SERVICES LLC'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT with the Clerk of the Court using the CM/ECF system which will give notification to counsel of record:

Ashley Kamphaus Brathwaite
Ellis & Winters, LLP
Post Office Box 33550
Raleigh, NC 27636

Autumn Hamit Patterson
Jones Day
2727 North Harwood Street
Dallas, TX 75201

Nora Foster Sullivan
NC Department of Justice
PO Box 629
Raleigh, NC 27602

Kelly Street Brown
3101 Glenwood Avenue Suite 200
P.O. Box 31627
Raleigh, NC 27622

And also via U.S. Mail to:

Teri Lynn Hinkle
19 Mossy Creek Trail
Murphy, NC 28906
828-494-2007
Email: queensongbird@gmail.com

This 9th day of May, 2018.

*/s/ Bradley J. Lingo*
Bradley J. Lingo
North Carolina Bar No. 44018
KING & SPALDING LLP
100 North Tryon Street
Suite 3900
Charlotte, North Carolina 28202
Tel: (704) 503-2573
blingo@kslaw.com
LR 83.1 Counsel
*Attorneys for Defendant Equifax Inc. and Equifax Information Services LLC*